DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant/Appellant, Jack Hamilton appeals his conviction in the Summit County Court of Common Pleas. We affirm.
 {¶ 2} On January 17, 2006, Defendant was indicted for one count of domestic violence, in violation of R.C. 2919.25(A), a third degree felony, pursuant to R.C. 2919.25(D)(4); one count of violating a protection order, while committing a felony offense, in violation of R.C. 2919.27, a third degree felony; and one count of domestic violence, in violation of R.C. 2919.25(C), a first degree misdemeanor, for conduct that took place on December 12, 2005. On May 1, 2006, Defendant *Page 2 
was supplementally indicted for one count of intimidation of a crime victim, in violation of R.C. 2921.04(B), a third degree felony; and two counts of violating a protection order, in violation of R.C. 2919.27, both third degree felonies, for conduct that took place on March 29, 2006.
 {¶ 3} Defendant pled not guilty and was tried to a jury on August 31, 2006. On September 1, 2006, a jury convicted Defendant of all counts alleged in the original indictment, i.e., one count of domestic violence; one count of violating a protective order; and one count of domestic violence, for the conduct that occurred on December 12, 2005. Defendant was found not guilty of the offenses alleged in the supplemental indictment for the conduct of March 29, 2006.
 {¶ 4} Defendant was sentenced to one year of imprisonment each for the felony convictions and six months of imprisonment for the misdemeanor conviction to be served concurrently.
 {¶ 5} Defendant has timely appealed his conviction and raises one assignment of error.
 Assignment of Error "The conviction of [Defendant] for the charges of domestic violence (F-3), violating a protection order, and domestic violence (M-1) in this case are against the manifest weight of the evidence and should be reversed."
 {¶ 6} Defendant asserts that his convictions based on the events of December 12, 2005, are against the manifest weight of the evidence. He asserts that the jury lost its way in finding the testimony of the victim, Defendant's ex-wife, *Page 3 
Crystal Hamilton, and other prosecution witnesses to be credible and discounting his alibi.
 {¶ 7} In determining whether a conviction is against the manifest weight of the evidence an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 8} A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. State v. Thompkins (1997), 78 Ohio St.3d 380, 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also, Otten,33 Ohio App.3d at 340.
 {¶ 9} Based on a review of the record, this Court finds it reasonable that the jury could have believed the testimony and evidence proffered by the State.
 {¶ 10} A person violates R.C. 2919.25(A) when that person "knowingly cause[s] or attempts] to cause physical harm to a family or household member." A person violates R.C. 2919.27 when that person recklessly violates the terms of a *Page 4 
protection order. A person violates R.C. 2919.25(C) when that person, "by threat of force, *** knowingly cause[s] a family or household member to believe that the offender will cause imminent physical harm to the family or household member."
 {¶ 11} The jury heard testimony from eight witnesses. The State produced Jimmy Lee Main, Kathy Condos, Ralph Crawford, Douglas Matson and the victim, Crystal Hamilton. The defense produced Eugenia Hamilton and John Hamilton. Defendant testified in his own defense.
Jimmy Lee Main
 {¶ 12} Mr. Main testified that he was Eric Main's son and was present the night the incident for which Defendant was convicted took place (December 12, 2005). Mr. Main testified that although Crystal was dating his father, she was married to Defendant, who Mr. Main identified in the courtroom. Mr. Main testified that on December 12, 2005, he was upstairs at his father's house, where Crystal Hamilton also lived. He heard a scream and looked out the window to see someone swing an arm and two people fall to the ground. Mr. Main indicated that when he arrived downstairs, he saw Crystal on the ground and Defendant get up and start to run away. Mr. Main testified that he chased Defendant but gave up the chase and called 911 from a neighbor's house after Defendant got into a vehicle and drove away.
 {¶ 13} On cross-examination, Mr. Main acknowledged that it was dark at the time of the incident. Finally, Mr. Main testified that although he loves his *Page 5 
father, his relationship with his father is not a good one and he would not lie to help him.
Kathy Condos
 {¶ 14} Kathy Condos was a witness to the events of March 29, 2006, the charges for which Defendant was acquitted. In addition to testifying to what she observed on March 29, 2006, Ms. Condos testified that she was a long time friend of Crystal Hamilton and had previously seen her with bruises and injuries to her face, arms and legs.
Ralph Crawford
 {¶ 15} Mr. Crawford testified that he was Crystal Hamilton's father. Mr. Crawford identified Defendant as his daughter's husband and pointed him out in the courtroom. Mr. Crawford said that he initially liked Defendant but that his opinion changed when Defendant started beating his daughter. Mr. Crawford indicated that he came to his daughter and Defendant's house after one beating and his daughter told him about several others. One incident involved Defendant throwing a beer bottle through his front windows. Mr. Crawford testified that his daughter had left Defendant at least ten times because of physical abuse. He knew of several incidents after which his daughter called the police, but Mr. Crawford testified that this was the first time he had testified in court. Finally, Mr. Crawford testified that Defendant pled guilty in 2004, to aggravated menacing of Mr. *Page 6 
Crawford's son and Crystal's brother, Robert, an incident that did not involve Crystal.
{¶ l6} On cross-examination, Mr. Crawford testified that he knew Defendant had many domestic violence charges, acknowledged that Defendant pled guilty to two such charges in 2000 and 2001, and stated that to his knowledge there had been no charges or convictions since that time. Mr. Crawford testified that he believed his daughter had filed charges but dropped them. Mr. Crawford indicated that he had seen bruises on his daughter since 2001, and that his daughter told him Defendant caused them. Mr. Crawford acknowledged that things had been better since his daughter left Defendant permanently.
Officer Matson
 {¶ 17} Officer Matson was the police officer that responded to the scene on December 12, 2005, after being dispatched by the 911 operator about a fight. Officer Matson testified that when he arrived, Crystal was visibly shaken and Jimmy Lee Main was out of breath. The officer noted that Crystal had red marks below her left eye and on her right cheek. The officer testified that Crystal told him that Defendant had approached her from behind in the driveway, grabbed her by the neck, and hit her in the face with his hand. Crystal told him that Defendant threatened her life. The officer identified photographs he took of Crystal on December 12, 2005, showing her injuries. Both Crystal and Jimmy completed witness statement forms that supported what they told him. The officer testified *Page 7 
that he also radioed the station and learned that there was an active protection order against Defendant. He later learned that Defendant had two prior domestic violence convictions.
 {¶ 18} On cross-examination, defense counsel played the tape of Jimmy Main's 911 call to dispute the officer's testimony that Jimmy was winded when he arrived at the scene on December 12, 2005. The officer testified that he heard panting during the 911 call. The officer acknowledged that he did not canvass the neighborhood for witnesses and did not talk to the neighbor whose phone Jimmy Main used to call 911. He also testified that he did not notice any abrasion marks on any other parts of Crystal's body or tears in her clothing.
Crystal Hamilton
 {¶ l9} Crystal Hamilton testified that she was Defendant's wife and identified him in the courtroom. Ms. Hamilton testified that Defendant had a serious drinking problem and that he physically abused her when he was drunk. When Defendant hit her, Ms. Hamilton testified that she fought back, called 911, or went to her mother's. Ms. Hamilton testified about one incident of abuse during which Defendant's cousin Eric tried to help her and Defendant hit him. Eric filed charges against Defendant.
 {¶ 20} Ms. Hamilton testified that she is seeking a divorce from Defendant and that it had been a long, difficult legal battle, primarily about the custody of their two children. She testified that prior to filing for divorce in December 2005, *Page 8 
she sought a protection order in domestic relations court to protect herself from Defendant. She came back to the court on December 12, 2005, and got the protection order extended.
 {¶ 21} In the early evening of December 12, 2005, Crystal testified that she left the house and was walking towards her car when Defendant grabbed her by the neck from behind. She could smell the alcohol on his breath and she struggled but he swung and hit her in the left cheek after which they both fell to the ground. Ms. Hamilton testified that Defendant told her he was going to kill her and win the divorce battle. Ms. Hamilton noted that she was very scared because Defendant would do anything when he was drunk. Ms. Hamilton testified that she screamed for help because she knew Jimmy Main was inside. Jimmy ran outside after Defendant and then called 911. Ms. Hamilton identified the pictures the police took of her injuries.
 {¶ 22} Ms. Hamilton acknowledged that she had been convicted for shoplifting with Defendant's mother in 2003. She also admitted to lying to police and recanting her testimony related to several domestic violence charges to keep Defendant from getting in trouble. She testified that Defendant had never hurt their children.
 {¶ 23} On cross-examination, Ms. Hamilton acknowledged an incident that took place on November 9, 2005, when she and Eric Main went to Defendant's mother's house to pick up Ms. Hamilton and Defendant's daughter after *Page 9 
Defendant's mother failed to return the child from visitation. Ms. Hamilton testified that Eugenia Hamilton physically attacked her, but acknowledged that Eugenia went to the hospital and that charges were later filed against Ms. Hamilton and Eric Main. Ms. Hamilton testified that she filed for a restraining order against Defendant, however, and described, among other reasons, the injuries caused by Eugenia Hamilton in her paperwork. Defendant was not present during the November 9, 2005 altercation. Ms. Hamilton testified that the charge against her was reduced to disorderly conduct but the charge against Eric Main was not reduced and he went to jail. Finally, Ms. Hamilton acknowledged that there was "bad blood" between herself, her family, Eric Main and Defendant and his family.
 {¶ 24} Ms. Hamilton testified that Defendant's brother asked her to drop the charges against Defendant because of Defendant's bad record, but denied telling Defendant's brother that she would only do so if Eugenia dropped the charges against Eric Main. Defendant testified that she would not have tried to make such a deal because Mr. Main was already in jail.
 {¶ 25} Ms. Hamilton acknowledged that she had never sought medical attention for any injuries caused by Defendant.
 Eugenia Hamilton *Page 10 
 {¶ 26} Eugenia Hamilton ("Eugenia") was Defendant's mother. Eugenia testified that Defendant lived with her after he and Crystal split up. Ms. Hamilton then testified as to the events of November 9, 2005, during which she was assaulted by Crystal Hamilton and Eric Main. Ms. Hamilton noted that Defendant was not present during the altercation.
 {¶ 27} Ms. Hamilton testified that Defendant used her car to go to court on December 12, 2005, returned to their home between 5:00 and 5:30 p.m. and did not leave again that evening. Defendant's car was not operable and he would have had to use her car to go anywhere.
 {¶ 28} On cross-examination, Eugenia admitted to being convicted in 1988 for obstructing justice for helping her son on a previous occasion.
John Hamilton
 {¶ 29} John Hamilton was Defendant's brother. John testified that he had no personal knowledge of the events of November 9, 2005, December 12, 2005 or March of 2006. Mr. Hamilton indicated that he was only present at trial to testify about a conversation he had with Crystal Hamilton during an exchange of the children for visitation with his brother. Mr. Hamilton testified that Crystal told him to tell his mother that she could drop the charges against Defendant. Crystal told him that she would tell the truth about Defendant if his mother would stop trying to put Eric Main in jail. Crystal told him that she had to do what was best for her family and that Eric Main could provide for her children. Mr. Hamilton *Page 11 
testified that he told Crystal that he would never tell his mother to recant her testimony and ended the conversation.
 {¶ 30} Mr. Hamilton also testified that his brother's vehicle had not been operable for a long time, that he had not seen his brother drink in a long time, and that their mother does not like anyone drinking in her house where his brother lives.
Jack Hamilton
 {¶ 31} Defendant described his relationship with Crystal as being parental in nature because she was only 18 years old and did not know how to do anything and he was 36 years old. He would describe the relationship as contentious. Defendant testified that Crystal used drugs and he was afraid for his children.
 {¶ 32} Defendant testified that he was not at his mother's house on November 9, 2005, for the altercation among his mother, Crystal and Eric Main. He claims he did not learn of the protective order that Crystal obtained as a result of the November 9, 2005 incident until he was arrested for violating it.
 {¶ 33} Defendant testified that on December 12, 2005, he attended a 3:00 p.m. hearing in domestic relations court that lasted about one hour. He then drove his mother's car back to her house, watched a movie, and went to bed. Defendant denied attacking Crystal Hamilton in her driveway that evening although he was later arrested for doing so. *Page 12 
 {¶ 34} Defendant testified that over the course of their relationship, Crystal made multiple calls to 911 and that he had been arrested multiple times until 2004. Defendant noted, however, that he had never gone to trial and had never served time in jail for domestic violence and the current charge was the only charge since 2004. He did acknowledge a conviction and incarceration for failing to comply in 1988, and a 2001 receiving stolen property and obstruction of justice conviction. Defendant asserted he had not had a drink in 11 months and had no desire to drink again.
 {¶ 35} Defendant argues that the State's testimony, particularly the victim's, was simply not worthy of belief as neither she nor any of the State witnesses were credible while the evidence in support of his alibi for the night of December 12, 2005 was credible. While this may have been a point worth arguing to the jury, which was obligated to assess the evidence critically, under the strict beyond a reasonable doubt standard, on appeal, this Court assesses the evidence liberally, considers whether "the evidence weighs [so] heavily against the conviction" that the necessary conclusion is that "the jury clearly lost its way and created *** a manifest miscarriage of justice."Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983),20 Ohio App.2d 172, 175.
 {¶ 36} Based on our review of the entire record, we conclude that Defendant's criticisms of the State's evidence in this case are inadequate to prove that the jury lost its way and created a manifest miscarriage of justice. Rather, we *Page 13 
find it reasonable that the jury believed the State's version of the events, disbelieved the Defendant, and convicted him accordingly. There was an eyewitness to the incident whose testimony was supported by the responding police officer. There was testimony as to the history of violence by Defendant upon Ms. Hamilton, and it was reasonable for the jury to disbelieve the alibi evidence presented by Defendant and his mother where the evidence established that Defendant's mother had lied on a previous occasion to protect her son.
 {¶ 37} We conclude that the conviction is not against the manifest weight of the evidence. This assignment of error is overruled and the judgment of the trial court is affirmed.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 14 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
 CARR, J. WHITMORE, J. CONCUR. *Page 1